# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUNETH WAAS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-4334** |
| **TAIHEIYO KISEN KAISHA, LTD.,** | **SECTION: "S" (2)** |
| **JR., M/V IKAN MEXICO AND** | |
| **PACORINI USA, INC.** | |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, Pacorini Holding, LLC, as successor to Pacorini USA, Inc. (Doc. #40), is **GRANTED**, and plaintiff's claims against it are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendant, KK Shipping Maritime S.A. (Doc. #42), is **GRANTED**, and plaintiff's claims against it are **DISMISSED**.

## BACKGROUND

Plaintiff, Suneth Waas, alleges that he was injured on August 31, 2006, when he fell from a Jacob's ladder that was rigged between the M/V IKAN MEXICO and a river barge at the port of New Orleans, Louisiana. At the time of the accident, plaintiff was employed by Captain I.S.

Derrick, LLC ("Derrick") as a marine surveyor. The M/V IKAN MEXICO was owned by KK Shipping Marine S.A. ("KK Shipping") and operated under charter and sub-charter agreements. The M/V IKAN MEXICO carried a cargo of steel products that was offloaded in New Orleans, Louisiana onto river barges. Pacorini Holding, LLC ("Pacorini") was hired as the stevedore to offload the cargo. Also, Derrick was hired to survey the cargo, which entails inspecting the cargo in stow, monitoring the offloading, and confirming that the barges were fit to receive the cargo.

Plaintiff began his survey work on the M/V IKAN MEXICO and the barges on August 28, 2006. He testified that he used Jacob's ladders to move between the vessel and the barges from that day until the day of his accident, but that this was the first job on which he used Jacob's ladders. The Jacob's ladders were allegedly put in place by Pacorini for its employees' use. On August 31, 2006, plaintiff fell approximately 30 to 40 feet from Jacob's ladder that he was ascending from a barge to the M/V IKAN MEXICO. Plaintiff sustained various injuries including a broken kneecap, fractured left femur, fractured hip socket, broken left humerus, broken jaw, and broken teeth. After the accident, the emergency personnel used the Jacob's ladder from which plaintiff fell to reach plaintiff. Plaintiff, his supervisor Matthew Salkeld, and a Pacorini employee Michael Vail all testified that there was nothing wrong with the Jacob's ladder at the time of the incident. Plaintiff alleges that Pacorini and KK Shipping are liable to him for their negligent acts which caused the accident.

## ANALYSIS

### 1.    Legal Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### 2.    Pacorini's Motion for Summary Judgment

Pacorini argues that it is entitled to summary judgment because as the stevedore it did not owe plaintiff a duty to provide him with the safest manner in which to access the barges.  Pacorini also argues that as the stevedore, it provided the Jacob's ladder for its employees' use, and that it did not owe a duty to provide a means of ingress and egress to the marine surveyor hired to survey the cargo who happened to be working aboard the same vessels. Pacorini contends that the only duty it owed to plaintiff was a duty to act reasonably, which it maintains that it did.  Further, Pacorini

argues that it was not negligent because plaintiff chose to use the Jacob's ladder, was comfortable using it, and the Jacob's ladder was free from defects.

Plaintiff argues that, as the stevedore, Pacorini was responsible for his safety as a longshoreman, and that there are material issues of fact as to whether Pacorini breached this duty by providing the Jacob's ladder, which was unsafe. Further, plaintiff contends that Pacorini assumed responsibility for his safety because Pacorini knew he was on the vessel, that he did not receive any instruction regarding the safe use of the Jacob's ladder, and that he was using the Jacob's ladder. Plaintiff argues that Pacorini was negligent in placing the Jacob's ladder in a manner that required him to go over the rail to descend it, by hanging it over an open cargo hatch, and by not providing fall protection.

Plaintiff's claims against Pacorini arise under general maritime tort law. "The analysis of a maritime tort is guided by general principles of negligence law." In re Signal Intern., LLC, 579 F.3d 478, 491 (5th Cir. 2009) (internal quotation and citation omitted). "Under general tort principles, a tortfeasor is accountable only to those to whom a duty is owed." Id. "Duty is measured by the scope of the risk that negligent conduct foreseeably entails." Id. (internal quotation and citation omitted). "The risk [of foreseeability] is whether the harm that does occur is within the scope of danger created by the defendant's negligent conduct." Id. (internal quotation and citation omitted). Pacorini owed plaintiff a duty of ordinary care under the circumstances, which includes a duty to warn only of harm that is reasonably foreseeable. Casaceli v. Martech Int'l, Inc., 774 F.2d 1322, 1329-30 (5th Cir. 1985) (citing Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980)). In order for liability to be established, a plaintiff must demonstrate that a duty is owed, a breach of

the duty, an injury, and a causal connection between the defendant's conduct and the plaintiff's injury. Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000).

Plaintiff claims that Pacorini breached its duty of reasonable care by providing the Jacob's ladder, putting it in an unsafe location, and failing to provide fall protection. Plaintiff argues that Pacorini is liable to him because it violated safety regulations found at 29 C.F.R. §§ 1915.74 and 1918.23(d).

Section 1915.74 provides in pertinent part that:

> Unless employees can step safely to or from the wharf, float, barge, or river towboat, either a ramp meeting [certain] requirements . . . or a safe walkway meeting [certain] requirements . . . shall be provided. When a walkway is impracticable, a substantial straight ladder, extending at least 36 inches above the upper landing surface and adequately secured against shifting or slipping, shall be provided. When conditions are such that neither a walkway nor a straight ladder can be used, a Jacob's ladder [that meets certain] requirements . . . may be used.

29 C.F.R. § 1915.74(c)(2). Plaintiff argues that this regulation mandates that a Jacob's ladder should only be used when there is no safer alternative for boarding a vessel and that KK Shipping or Pacorini should have provided him a crane suspended personal transfer basket to move to and from the barge. However, the regulation does not place such a duty on KK Shipping or Pacorini with regard to plaintiff. Section 1915.2 provides that the regulations in Part 1915 apply to "ship repairing, shipbuilding and shipbreaking employments and related employments." 29 C.F.R. § 1915.2. Also, Section 1915.3 provides that responsibility for compliance with the regulations in part 1915 is on employers. 29 C.F.R. § 1915.3. Neither KK Shipping nor Pacorini was plaintiff's

employer, and plaintiff was not involved in ship repairing, shipbuilding, or shipbreaking. Thus, neither KK Shipping nor Pacorini owed plaintiff any duty under 29 C.F.R. § 1915.74.

Part 1918 provides safety and health regulations for longshoring. Subpart C of Part 1918 relates to gangways and other means of access. Section 1918.23(d) of Subpart C provides that: "[w]hen a Jacob's ladder is being used so that there is a danger of an employee falling or being crushed between the vessel, barge, or other structure (pier), suitable protection shall be provided." 29 C.F.R. § 1918.23(d). Plaintiff argues that this section means that KK Shipping or Pacorini was obligated to provide him with fall protection when he was using the Jacob's ladder. However, Section 1918.21 of Subpart C explains that the regulations of Subpart C apply only to employers. 29 C.F.R. § 1918.21 ("The employer shall not permit employees to board or leave any vessel, except a barge or river towboat, until all of the applicable requirements of this subpart have been met."). Neither KK Shipping nor Pacorini was plaintiff's employer, thus they did not owe him any duty under 29 C.F.R. § 1918.23(d).

As stated above, Pacorini, as a stevedore, owed plaintiff, a third-party surveyor, a duty of ordinary, or reasonable, care under the circumstances. Plaintiff's supervisor, Matthew Salkeld, testified that it is standard practice in the Port of New Orleans for stevedores to use a Jacob's ladder to board barges. Also, a Pacorini employee with 33 years of experience in the marine industry in New Orleans, Micahel Vail, testified that the "[o]nly way [he] know[s] how to get up in the barge – on the ship is walk up the gangplank and go down the Jacob's ladder." There is no evidence that the Jacob's ladder from which plaintiff fell was defective. Indeed, the emergency personnel who arrived at the scene of the accident descended the Jacob's ladder to reach plaintiff on the barge

below.  Additionally, Salkeld, who witnesses the fall, testified that plaintiff appeared to become weak and fall while he was near the top of the Jacob's ladder, but not while attempting to climb over the railing on which the ladder was secured.[1]  There is no genuine issue of material fact that Pacorini acted with reasonable care. Pacorini did not breach the duty owed to plaintiff.  Therefore, Pacorini is entitled to summary judgment, dismissing plaintiff's claims against it.

**3.      KK Shipping's Motion for Summary Judgment**

KK Shipping argues that it is entitled to summary judgment because it was Pacorini that supplied and rigged the Jacob's ladder.  KK Shipping also argues that plaintiff can only prevail if he can prove that there was some defect in the Jacob's ladder, and there is no evidence of a defect. Further, KK Shipping argues that as the owner of the vessel it did not owe plaintiff, a marine surveyor hired to survey the cargo, a duty to provide a safe means of ingress and egress to the vessel.

Plaintiff argues that there are genuine issues of material fact as to whether KK Shipping knew or should have known that there was a dangerous condition with regards to the Jacob's ladder, and whether KK Shipping therefore had a duty to intervene which includes a duty to repair the Jacob's ladder, or warn of its unsafe condition.

---

[1] Deposition of Matthew Salkeld, p. 16, ll. 11-21

> [H]e was coming up the ladder and I was standing right there at rail. Ladder was here and I'm adjacent to where – you know, I'm pretty much watching him walk – you know, climb up the ladder, and when he got up to almost where my feet were, I could see his head, he – he didn't look too good.  He said – he either indicated that he didn't feel well or he was tired, and he reached up because he was almost at the top, to grab the rail and he – and next thing I know, he's fallen.

Section 905(b) of the Longshore and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, grants covered maritime workers an exclusive remedy against a "vessel" for injuries caused by the negligence of the "vessel." See 33 U.S.C. § 905(b). The LHWCA defines "vessel" broadly to include both the physical vessel on which the worker was injured and also "said vessel's owner, owner *pro hac vice*, agent, operator, charter or bare boat charterer, master, officer, or crew member." Id. at § 902(21). No party disputes that plaintiff is a maritime worker covered by the LHWCA or that the M/V IKAN MEXICO is a "vessel" within the meaning of the LHWCA. Section 905(b) is therefore the exclusive means by which plaintiff may recover against KK Shipping for the vessel's alleged negligence. See McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 289 (5th Cir. 2008).

In Scindia Steam Navigation Co. v. DeLosSantos, 101 S.Ct. 1614 (1981), the Supreme Court of the United States defined the vessel's duty to longshoremen. The United States Court of Appeals for the Fifth Circuit has extended the rationale of Scindia to any independent contractor working aboard the vessel. See Casaceli v. Martech Int'l, Inc., 774 F.2d 1322, 1326-27 (5th Cir. 1985). Scindia provides as follows:

> The vessel owner must provide work space, ship's gear, equipment, and tools in a condition that allows an [independent contractor], acting with reasonable care, to carry on his operations with reasonable safety. The owner must warn the [independent contractor] of any hidden dangers which the owner knows or should know about in the exercise of reasonable care. The owner need not supervise, inspect, or monitor the . . . operations for dangerous conditions that develop during that process unless required to do so by contract, positive law, or custom. He may generally rely on the [independent contractor's] exercise of reasonable care. An exception to this lack of supervisory duty exists if the shipowner becomes aware of a dangerous condition in the ship's gear during the . . . operation, and is also aware that the [contractor] is unreasonably failing to protect [the employee] against this

8

> danger.  The shipowner then has a duty to intervene and repair the gear constituting
> the danger.

Id. at 1326 (citing  Scindia Steam Navigation Co. v. DeLosSantos, 101 S.Ct. at 1621-26). These duties are known as the "turnover duty," the "active control of the vessel," and the "duty to intervene." Howlett v. Birksdale Shipping Co., S.A., 114 S.Ct. 2057, 2065 (1994).  It is undisputed that the duty to intervene is the only Scindia duty applicable in this matter.

A vessel owner has the duty to intervene in the stevedoring operations when it "has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of "obviously improvident judgment, has failed to remedy it." Greenwood v. Societe Francaise, 111 F.3d 1239, 1248 (5th Cir.1997). The shipowner's duty to intervene "is narrow and requires something more than mere shipowner knowledge of a dangerous condition." Id. at 1249 (citing Singleton v. Guangzhou Ocean Shipping Co., 79 F.3d 26, 28 (5th Cir.1996)). "[F]or the expert stevedore's judgment to appear 'obviously improvident,' that expert stevedore must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken into account." Id.; see also Moore v. M/V ANGELA, 353 F.3d 376, 391-92 (5th Cir.2003).

For the purpose of this motion, KK Shipping stipulates that it had actual knowledge of the use of the Jacob's ladder without fall protection.  Even if the ship owner did have such knowledge, there is nothing before the court that indicates that the stevedore's actions were so "obviously improvident" that the shipowner should have intervened.  Further, the testimony presented shows that the Jacob's ladder was in good condition, and that using such ladders to access barges was

common practice in the Port of New Orleans.  The evidence presented does not show that using the Jacob's ladder to access the barges was "so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm."  This is especially true in light of the fact that the emergency personnel descended the Jacob's ladder to access plaintiff after his fall.  Therefore, the KK Shipping did not have a duty to intervene to prevent the use of the Jacob's ladder without fall protection.  The fact that an alternative method may have been available does not mean that the Jacob's ladder created an unreasonable risk of harm.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, Pacorini Holding, LLC, as successor to Pacorini USA, Inc. (Doc. #40), is **GRANTED**, and plaintiff's claims against it are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendant, KK Shipping Maritime S.A. (Doc. #42), is **GRANTED**, and plaintiff's claims against it are **DISMISSED**.

New Orleans, Louisiana, this ___7th___ day of April, 2010.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**